IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**CEDRIC KING**                                                                              **PLAINTIFF**

v.                                                                                             No. 4:05CV265-P-A

**CORRECTIONS CORPORATION OF AMERICA, ET AL.**            **DEFENDANTS**

### REPORT AND RECOMMENDATION

On June 29, 2006, plaintiff Cedric King, an inmate in the custody of the Mississippi State Penitentiary with inmate number R0808, appeared before the undersigned for a hearing pursuant to *Spears v. McCotter,* 766 F.2d 179 (5th Cir. 1985), to determine whether there exists a justiciable basis for his claim filed pursuant to 42 U.S.C. § 1983. A plaintiff's claim shall be dismissed if "it lacks an arguable basis in law or fact, such as when a prisoner alleges the violation of a legal interest that does not exist." *Martin v. Scott*, 156 F.3d 578 (5th Cir. 1998)(citations omitted). For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this lawsuit.[1]

### Factual Allegations

The following facts are those alleged by the plaintiff in his complaint and at the hearing. The plaintiff, who was housed at the Delta Correctional Facility at the time of the events in the complaint, was assaulted, taken to medical, examined, treated, and taken to segregation on July 29, 2005.[2] The facility had instituted a policy that inmates in the pod with the best score on inspection will receive candy bars and popcorn. The plaintiff was asleep in his bunk in Charlie

---

[1]28 U.S.C. § 1915(g).

[2]The plaintiff, as part of a group of Muslim inmates, had filed a grievance with the Mississippi Department of Corrections Administrative Remedy Program in May or June of 2005.

Building, B-Pod, when defendants Burnett, Speight, Randle, Swims, Wiley, and Westbrooks entered the pod for daily inspection. When the inspection was complete, defendant Randle told the inmates that B-Pod had failed the inspection. When asked why, Randle replied, "You lost because King was asleep in his bed during the inspection." An inmate asked Randle, "What can we do about somebody being asleep in bed?" Randle replied, "Ride him out of the pod." The inmate said, "Yeah, if we ride him out you'll send us to lockdown." Randle responded, "Nothing will be done if you ride him out."

After hearing this exchange and the following discussion of the other inmates the plaintiff decided that it would not be safe for him to stay in B-Pod. He packed his things in a blanket and walked to the exit to Charlie B-Pod. Burnett ordered the Control Room Officer to open the door. The plaintiff exited the pod and told Burnett that Randle's statements to the other inmates had put the plaintiff's life in danger. Burnett then grabbed the plaintiff in a headlock; Randle and Speight grabbed the plaintiff, as well. The three guards tried to ram the plaintiff's head into a stool in the hallway, but the plaintiff twisted out of the way. The three guards then tried to ram the plaintiff's head into the wooden mailboxes lining the hallway. The plaintiff could not twist out of the way of the mailboxes, but he freed an arm to shield his head. He cut his arm above the left elbow in doing so. The three guards threw the plaintiff on the floor; Burnett put his knee in the plaintiff's back while Randle and Speight held the plaintiff's arms behind his back, and one of them cuffed the plaintiff's wrists. Defendants Swims, Wiley, and Westbrooks remained in the hallway and did nothing to stop the attack on the plaintiff. Swims said, "Throw him back on the pod and let those niggers take care of him." The plaintiff did not resist or threaten the officers in any way during the encounter.

Randle and Speight are members of the Delta Correctional Facility Security Operations Response Team ("SORT"). Burnett and Randle have repeatedly engaged in excessive use of force against inmates in the past. Warden Parker was on notice of the abusive conduct of Burnett and Randle because they have had numerous complaints filed against them over many months.

After the incident, Burnett ordered Speight and Sgt. Perkins to take the plaintiff "to medical then to segregation." Nurse Practitioner Bekhum examined the plaintiff, noted the plaintiff's injuries in his medical file, then used seven sutures to close the plaintiff's wounded arm. The plaintiff requested that Nurse Practitioner Bekhum to record his injuries with a video camera and report. The plaintiff also asked how to document the attack in an incident report. Nurse Fluker told the plaintiff that the medical staff no longer fills out such reports. Bekhum did, however, say that he would note the attack in his examination report.

After his treatment, the plaintiff was escorted to Administrative Segregation. Just after 11:00 that night, Captain Walter Harris delivered a detention notice initiated by Captain Emma Hawkins. The notice stated as the reason for detention, "Adm. Seg. Pending Disciplinary Action." The notice described the incident as one in which the plaintiff forced his way off the detention block. At 9:35 the next morning, July 30, 2005, the plaintiff received a Rule Violation Report (# 673817), in which the incident was characterized as the plaintiff's forceful departure from Charlie B-Pod. The plaintiff requested an investigation and listed inmates Tawrence Amos and Randy Lindsey as witnesses. The plaintiff was released from Administrative Segregation on August 4, 2005, but the plaintiff has not received the classification review in accordance with Mississippi Department of Corrections policies and procedures. He wrote to defendant Sparkman about the incident in August or September 2005 but did not get a response.

## Discussion

This case presents the court with a claim that some defendants used excessive force against the plaintiff, and others failed to protect the plaintiff from the attack. The plaintiff also claims that the defendants violated his right to due process by failing to conduct a review of his classification once he was released from administrative segregation after the incident.

### Excessive Force

The plaintiff has stated a claim against Assistant Warden Joseph Burnett, Investigator Randle, and Unit Manager Speight for use of excessive force. He has likewise stated a claim against Case Manager Wiley, Case Manager Westbrooks, and Classification Officer Swims for failure to protect the plaintiff from the attack of Burnett, Randle, and Speight. The plaintiff has stated a claim against Christopher Epps for failure to protect, as the plaintiff alleged at the *Spears* hearing that he wrote to defendant Epps about similar occurrences, and Epps did nothing to prevent the instant attack. Finally, the plaintiff has stated a claim against Corrections Corporation of America, as he alleged that he wrote letters to Corrections Corporation of America officials about the inadequacy of current policy and procedure to prevent an attack, but company officials failed to alter the policy before the plaintiff was attacked.

### Failure to Protect

The plaintiff has not, however, stated a claim against the Delta Correctional Facility or Emmitt Sparkman, as the plaintiff did not contact either of these defendants before the incident. As such, these defendants could not have prevented the attack on the plaintiff and should therefore be dismissed. The plaintiff claims that three defendants, Wiley, Westbrooks, and Swims, failed to protect the plaintiff from the attack of defendants Burnett, Randle, and Speight.

Deliberate indifference "[is] the proper standard to apply in the context of convicted prisoners who claim[] . . . the failure to protect." *Grabowski v. Jackson County Public Defenders Office*, 47 F.3d 1386, 1396 (5th Cir. 1995). The plaintiff must allege that the defendants acted with reckless disregard to the possibility that the defendants in this case would attack and injure the plaintiff. A prison official acts with deliberate indifference only if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). The plaintiff has not alleged, however that these two defendants "consciously disregard[ed] a substantial risk of serious harm," to the plaintiff because he did not contact these defendants until *after* the incident. *Id.* at 826 (citation omitted). As the plaintiff did not notify these two defendants about the risk before he was attacked, they could not have prevented the attack, and the plaintiff's claims against these defendants must be dismissed.

**Due Process – Classification**

The plaintiff finally claims that the defendants failed to hold a hearing to review his classification status after he was released from administrative segregation. This allegation fails to state a claim upon which relief could be granted. Inmates have neither a protectable property or liberty interest to any particular housing assignment or custodial classification, either under the United States Constitution or under Mississippi law. *Hewitt v. Helms*, 450 U.S. 460, 468 (1983); *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995); Wilson v. Budney, 976 F.2d 957, 958 (5th Cir. 1992); *McCord v. Maggio*, 910 F.2d 1248, 1250 (5th Cir. 1990) (citations omitted); Miss. Code Ann. §§ 47-5-99 to -103 (1993). Prisoner

classification is a matter squarely within the "broad discretion" of prison officials, "free from judicial intervention" except in extreme circumstances. *McCord*, 910 F.2d at 1250 (citations omitted). The plaintiff's allegations do not set forth such extreme circumstances; as such, the plaintiff's challenge to his classification should be dismissed.

## Summary

The plaintiff's claims against Delta Correctional Facility and Emmitt Sparkman should be dismissed for failure to state a claim upon which relief could be granted. The plaintiff's claim that the defendants violated his right to due process should also be dismissed for failure to state a claim upon which relief could be granted. The plaintiff's claims against Assistant Warden Joseph Burnett, Investigator Randle, Unit Manager Speight, Case Manager Wiley, Case Manager Westbrooks, Classification Officer Swims, and Mississippi Department of Corrections Commissioner Christopher Epps shall proceed. The court shall direct process to issue for these defendants by separate order.

## Handling of Objections, Acknowledgment of Receipt

The court refers the parties to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for the appropriate procedure in the event any party desires to file objections to these findings and recommendations. Objections are required to be in writing and must be filed within ten (10) days of this date, and "a party's failure to file written objections to the findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except on grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court . . . ." *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en*

*banc*)(citations omitted); *see also United States v. Carrillo-Morales*, 27 F.3d 1054, 1061-62 (5th Cir. 1994), *cert. denied*, 513 U.S. 1178, 115 S.Ct. 1163, 130 L. Ed. 1119 (1995). The plaintiff is directed to acknowledge receipt of this report and recommendation by signing the enclosed acknowledgment form and returning it to the clerk of the court within ten (10) days of this date. The plaintiff is warned that failure to comply with the requirements of this paragraph may lead to dismissal of this lawsuit under Fed. R. Civ. P. 41(b) for failure to prosecute the claim and for failure to comply with an order of the court.

        Respectfully submitted this 18th day of July, 2006.

        /s/   S. Allan Alexander
        UNITED STATES MAGISTRATE JUDGE